IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. 3:17-cr-30201-NJR |
| **GEORGE RHODES,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Compassionate Release re First Step Act filed *pro se* by Defendant George Rhodes (Doc. 113). Rhodes asks the Court to grant his request for compassionate release and enter an order reducing his sentence to time-served. For the reasons set forth below, the motion is denied.

### BACKGROUND

On September 11, 2019, Rhodes was sentenced to 120 months of imprisonment and three years of supervised release for possession of a weapon by a felon. (Docs. 1, 96). Rhodes's conviction arose after he was caught driving around Alton, Illinois, without insurance or a driver's license and with a fully loaded gun, bullet in the chamber, within arm's reach. Rhodes also had possession of three bags containing a total of 4.3 grams of cocaine within arm's reach. (Doc. 117, p. 10). According to the website for the Bureau of Prisons ("BOP"), Rhodes is scheduled to be released on April 21, 2026.[1]

---

[1] Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 19, 2021).

On May 19, 2020, Rhodes filed his first *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. 108). Soon after, the motion was dismissed for failure to exhaust administrative remedies. (Doc. 112). Rhodes filed his second *pro se* Motion for Compassionate Release on January 4, 2021. (Doc. 113). The parties do not dispute that Rhodes exhausted his administrative remedies before moving for compassionate release a second time.

Rhodes now argues he should be granted compassionate release due to extraordinary and compelling circumstances. (*Id.*). He believes the COVID-19 pandemic offers sufficient grounds for compassionate release because the BOP has repeatedly proven unable to "effectively" prevent the spread of the disease within their facilities. He points to a recent outbreak at Greenville that resulted in over 180 inmates contracting COVID-19 and claims that over two-thirds of the inmates at Greenville had contracted COVID-19 as of December 25, 2020. (*Id.* at p. 1). Additionally, he argues that the design of prisons renders proper self-care and social distancing as recommended by the CDC impossible. (*Id.*). Rhodes notes that he suffers from high blood pressure and obesity, which greatly increase his risk of severe illness or death should he contract COVID-19. (*Id.*). He believes that these medical conditions paired with his inability to practice proper self-care render his "immediate and long-term health in jeopardy." (*Id.* at p. 2).

Rhodes further submits that he has already served approximately half of his sentence, and he has committed to self-improvement and behaviors that will aid in a smooth transition back into society. (*Id.*) To support this argument, Rhodes points to the numerous Adult Continuing Education courses that he has completed, as well as the fact

that he has maintained employment within the UNICOR textiles factory. He also points to his spotless disciplinary record. Should his motion be granted, Rhodes will reside with his parents and return to his previous employer, ProLogistix in Granite City, Illinois. (*Id.*).

The Government opposes the motion, arguing that Rhodes has failed to establish extraordinary and compelling reasons for compassionate release. (Doc. 117). The Government first addresses the competency of the BOP's efforts to protect prisoners from COVID-19 and states that the BOP has taken significant steps to mitigate prisoners' risk. Greenville only had 74 inmates testing positive for COVID-19 at the time of the Government's response. (*Id.* at p. 3). The Government also points out that the BOP is working with the CDC to ensure distribution of the COVID-19 vaccine. As of December 30, 2020, Greenville was one of 19 BOP facilities to have vaccinations. (*Id.*).

Pointing to the guiding framework of U.S.S.G. § 1B1.13, the Government further emphasizes that compassionate release was not designed to release prisoners due to the mere existence of a generalized threat such as COVID-19 and asserts that Rhodes's medical conditions fail to satisfy the severity required to necessitate release. (*Id.* at pp. 7-9). The Government acknowledges that Rhodes's conditions are on the list of CDC risk factors but contends that these factors are being managed by the BOP through ongoing medical care, as evidenced by Rhodes's medical records. This treatment includes medication for hypertension and education on diet. Additionally, the Government emphasizes that Rhodes has received two COVID-19 tests and tested negative both times, further establishing that the BOP is successfully working to mitigate his risk. (*Id.*).

The Government also contends Rhodes would be a danger to the public if he were

released and that the 18 U.S.C. § 3553(a) factors require denial of the motion. (*Id.* at pp. 9-11). Rhodes, a previously convicted felon, has an extensive and violent criminal history. In the last 15 years, he has accumulated 14 convictions; at least six of those were due to acts of violence including an aggravated battery and violence against a female victim. Additionally, he has a previous conviction for selling the same narcotics as were involved in this case. Due to his extensive and violent criminal history, the Government argues that Rhodes's sentence is appropriate, and the Court should deny Rhodes's motion for compassionate release. (*Id.* at pp. 10-11*).*

In reply, Rhodes argues that the "dramatic steps" undertaken by the BOP to mitigate risk do not equate to effective change. (Doc. 120, p. 4). Using the statistics cited in the Government's response, he argues that the 74 inmates who tested positive at that time are proof that the BOP's mitigation efforts are ineffective. Rhodes also argues that the BOP has a 66% failure rate pertaining to the protection of the inmate population. (*Id.* at p. 5). He further emphasizes that both high blood pressure and obesity are listed on the CDC website as risk enhancers thus qualifying his circumstances as extraordinary and compelling. (*Id.* at p. 4). He also states that the Court is not bound to follow the definition of "extraordinary and compelling circumstances" found in § 1B1.13 and may use its own discretion. (*Id.* at pp. 5-6). He argues the presence of COVID-19 has turned his placement into "a potential death sentence" and for this reason the Court should find his circumstances to be extraordinary and compelling. (*Id.* at p. 6.). He also emphasizes that his post-sentencing conduct should be taken as "the most accurate indicator of his present . . . tendencies." (*Id.* at p. 7).

## THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it from the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the BOP to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

After such a motion is filed, either by the Director of the BOP or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), the Application Notes to the policy statement set forth specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. § 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*.

Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or the community" pursuant to 18 U.S.C. § 3142(g).

## DISCUSSION

Under Application Note 1(A)(ii) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for reducing a sentence exist where the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. While the Court is not bound to follow this definition, it is a guiding definition. "The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion within being conclusive." *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020).

Here, Rhodes has failed to establish extraordinary and compelling circumstances that warrant granting his motion for compassionate release. Rhodes has provided no evidence that he cannot properly care for himself within the correctional facility. In fact, there is strong evidence that Rhodes is receiving sufficient treatment to benefit his health and manage his medical conditions as evidenced by the administration of Triamterene to treat his hypertension and diet education to address his obesity. (Doc. 117, p. 9). Thus, the potential risk factor of high blood pressure and the acknowledged risk factor of obesity do not successfully establish extraordinary and compelling circumstances. *See*

*United States v. Russell*, 846 F. App'x 416 (7th Cir. 2021) (affirming a district court decision to deny compassionate release to an inmate suffering from high blood pressure and obesity because his conditions were being monitored and managed appropriately, and the increased risk of contracting COVID-19 was not sufficient to establish extraordinary and compelling circumstances). Additionally, there is no evidence that the BOP is failing to mitigate risk in its Greenville facility. As of July 19, 2021, no inmates were suffering from COVID-19, and 800 inmates had received vaccinations.[2]

Even if Rhodes had successfully demonstrated extraordinary or compelling reasons for release, in order to grant his motion, the Court must also consider the 18 U.S.C. § 3553(a) factors and determine that Rhodes is not a danger to the public. Here, the Court cannot make that finding. As argued by the Government, Rhodes's possession of a loaded gun and dangerous narcotics shows an utter disregard for the law and the safety of the community. Further, his previous time in prison failed to serve as an adequate deterrent. (Doc. 117, p. 10). Given his extensive and violent criminal history, the Court is unable to say that Rhodes would not be a danger to the safety of any other person or the community if he were released.

Finally, the Court commends Rhodes for his reported commitment to self-improvement and his participation in ongoing education. Unfortunately, those accomplishments are not enough to warrant compassionate release under 18 U.S.C. § 3582.

---

[2] Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 19, 2021).

Because Rhodes has not established any extraordinary and compelling reasons warranting a reduction in his term of imprisonment, and because the Court is concerned Rhodes would be a danger to the community if he were released, his Motion for Compassionate Release (Doc. 113) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  July 20, 2021**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**